UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14074-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SHANNIMA YUANTRELL SESSION,

    Defendant.
_____/

**DEFENDANT'S MOTION FOR SUPRESSION OF EVIDENCE FROM A SEARCH OF HIS FACEBOOK ACCOUNT(S) WITH INCORPORATED MEMORANDUM IN SUPPORT**

Comes now the defendant Shannima Y. Session, by and through appointed counsel, Kafahni Nkrumah, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, respectfully requesting this Court to suppress any and all physical evidence whether tangible or intangible obtained through the search of Mr. Session's Facebook account(s) and/or any other tangible or intangible evidence obtained during or as a direct or indirect result from the search of Mr. Session's Facebook account(s) on February 2, 2021.

**FACTS**

On January 29, 2021, Special Agent Peter Angell, with the Federal Bureau of Investigation ("FBI"), sought and obtained a search warrant for Mr. Session's Facebook account(s). The warrant was executed on February 2, 2021. The basis for

the affidavit was information obtained from alleged victims/informants who were unnamed. The alleged victims state that Mr. Session was allegedly forcing them to participate in commercial sex for money by force or coercion. None of the alleged victims claimed that any of the alleged acts of prostitution or the promotion of the prostitution, nor the recruitment of any of them, occurred on social media.

## MEMORANDUM OF LAW

### A. Facebook Search Warrant

The defendant, Shannima Y. Session, moves this Honorable Court to suppress all the evidence seized from the search of his Facebook account based on the following three reasons: (1) the affidavit attached to the Facebook warrant application failed to establish probable cause; (2) the warrant is overbroad in scope and time; and (3) the good faith exception does not apply.

1. **The search warrant affidavit failed to present facts sufficient to establish that evidence thereof would be found on Mr. Session's Facebook account.**

Social media accounts are entitled to some level of *Fourth Amendment* protection. *United States v. Hamilton*, 2019 U.S. Dist. LEXIS 159077* 5 (E.D. KY. Aug. 30, 2019); *See e.g., United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012) (social media "posting using more secure privacy settings reflect the user's intent to preserve information as private and may be constitutionally protected.").

Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that "there is a fair probability that contraband

or evidence of a crime will be found in a particular place." *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To be sufficient an affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause and 'wholly conclusory' statements do not meet the probable cause requirement." *Gates*, 462 U.S. at 238; *United States v. Reeves*, 647 Fed. Appx. 942, 945 (11th Cir. 2016). The affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity. *Id.*; *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). Nevertheless, there still must be a "substantial basis" to conclude that the instrumentalities of the crime will be discovered on the searched premises. *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982).

"For the requisite nexus to exist – regardless of whether the underlying crime requires the use of social media or an electronic device – the affidavit in support of the search warrant must establish why the government believes that relevant evidence may reside on the particular suspect's Facebook account." *United States v. Hamilton*, 2019 U.S. Dist. LEXIS 159077* 7 (E.D. KY, Aug. 30, 2019); quoting *United States v. Whitt*, 2018 U.S. Dist. LEXIS 7420* 2 (S.D. Ohio, Jan. 17, 2018); *United States v. Bowers*, 2021 U.S. Dist. LEXIS 127060 *4-5 (W.D. Pa. July 8, 2021).

In the Facebook context, courts have found probable cause exists when the affidavit presents facts that establish evidence of a crime will be found on a defendant's Facebook account. For instance, in *United States v. Deleon*, 2021 U.S.

3

Dist. LEXIS 183038* (E.D. KY., Aug. 23, 2021), the defendant was arrested and charged with obtaining custody of a minor for use in production of pornography in violation of 18 U.S.C. § 2251A(b)(1), crossing state lines to engage in a sexual act with a person less than twelve years old in violation of 15 U.S.C. § 2241(c); travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. 2423(b); and transportation of a minor with intent to engage in criminal sexual activity in violation of 19 U.S.S. 2423(a). *Id*. at *2-3. During a forensic interview with the two victims the Ashland Police Department investigators learned that defendant had used Facebook messenger to contact one of the victims stating "I wanna see them huge boobs, lol." *Id*. at *3. The investigators also spoke with the victims' grandmother, a former girlfriend of defendant's, who advised that defendant used several Goggle and Yahoo email accounts to back up his digital devices, including his cell phone. The Ashland police department obtained search warrants for Google, Facebook, and Oath Holdings. *Id*. The district court concluded the affidavit established probable cause based on the allegations of the victims and also the fact that the defendant "used his Facebook account to message one of the victims to request photos of her breasts." *Id*. *7-8.

Likewise, in *United States v. Mize*, 2020 U.S. Dist. LEXIS 166759 (S.D. Ohio Sept. 11, 2020), the court held a search warrant affidavit established probable cause to search the defendant's Facebook account. *Id*. at *7-8. In *Mize*, the defendant, a deputy sheriff, was under investigation for an inmate assault. *Id*. at 2-3. The affidavit set forth allegations that the defendant contacted three other officers via

4

Facebook and messaged one officer who participated in the victim's arrest stating "So I got so much shit for this old man you brought in all because I pushed this bastard as he resisted me, then he falls as soon as I push him in G holding…Got my hearing tomorrow just wanted to you to know if you have anything to add please feel free to add this is so dumb." *Id*. at 2.  The court found that the affidavit provided that "based on the defendant giving false statements to his supervisor and contacting witnesses on Facebook that… there was a fair probability that evidence of defendant's attempting to falsify records would be found on the Facebook account." *Id*. at 10.

Unlike *Deleon* and *Mize*, the affidavit here fails to provide a "fair probability" or a "substantial basis" to believe that Mr. Session's Facebook account contained evidence of sex trafficking crimes.  None of the alleged victims state that they meet, and/or, communicated with the defendant nor was there any mentions by any of the alleged victims that the defendant Facebook in any way to facilitate or promote sex trafficking.  Nothing in the affidavit presents facts that establish evidence of a crime will be found on a defendant's Facebook account.

    A.    **The search warrant affidavit for Mr. Session's Facebook account lacked probable cause.**

The Session affidavit is devoid of any evidence implicating Mr. Session in engaging in discussions of criminal conduct using Facebook and therefore there is no nexus that exist between Mr. Session's Facebook account and any alleged crimes, and the warrant was not supported by probable cause.  First, Special Agent Peter C. Angell relies on the following facts for his probable cause: (1) speaking with a

5

confidential informant who allegedly informed the agent that the defendant is known to "be a pimp" in the Highland Park area of Lake Placid, Fl.; and (2) the agent spoke with five women who alleged that Mr. Session used violence, and threats of violence, to force them to engage in prostitution.

The information provided by Agent Angell in the affidavit does not provide a nexus between the evidence being searched for, information on alleged sex trafficking, and Mr. Session's Facebook accounts. The social media postings that are referenced are of innocent activities, i.e. posting money and bragging about how he is a "money maker," which are things that are done on social media by hundreds of people on the internet every single day. From highlighting arguments and disagreements, that have no mention of, or anything to do with sex trafficking, these are innocent posts of a person's life and do not portend to provide evidence of any criminal conduct.

Because the search warrant affidavit for Mr. Session's Facebook accounts was not supported by probable cause, Mr. Session's *Fourth Amendment* rights were violated.

2. **The Facebook search warrant was so broad it violated the *Fourth Amendment's* particularity requirement.**

Besides probable cause, a warrant must particularly describe the place to be searched and the persons or things to be seized. *U.S. Const. Amend.* IV. Particularity requires the warrant to clearly state what is sought. The Fourth Amendment requires that 'those searches deemed necessary be as limited as possible" to prevent "general exploratory rummaging in a person's belongings.'" *United States v. Blake*,

6

868 F.3d 960, 973 (11th Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 463, 467 (1971)).

The Eleventh Circuit addressed overboard social media warrants in *Blake*, and signaled that warrants requiring social media sites like Facebook to disclose "virtually every kind of data that could be found in a social media account" are overbroad and unconstitutional. *Id.* (quoting *Coolidge*, 403 U.S. at 467). "It is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause. *Cassidy v. Goering*, 567 F.3d 628, 636 (10th Cir. 2009); *United States v. Laurenzo*, 2019 U.S. Dist. LEXIS 74340* 8 (D.N.M., May 2, 2019). The particularity requirement prevents "general, exploratory searches," *United States v. Khanani*, 502 F.3d 1281, 1289-90 (11th Cir. 2007), which the Fourth Amendment protects against. *Id.*; see also *United States v. Shipp*, 392 F.Supp.3d 300, 311 (E.D. N.Y. 2019) (quoting *United States v. Bradbury*, 2015 WL 37373393 (N.D. Ind. 2015)).

Social media accounts such as Facebook contain a vast number of details and information on a person's life. As courts have recognized, Facebook provides "a single window through which almost every detail of a person's life is visible. Indeed, Facebook is designed to replicate, record, and facilitate personal, familial, social, professional, and financial activity and networks." *United States v. Burkhow*, 2020 U.S. Dist. LEXIS 20319* 22 (N.D. Iowa, Feb. 6, 2020) (quoting *United States v. Shipp*, 392 F.Supp.3d 300 (E.D.N.Y. 2019). A search of a Facebook account differs from a

7

traditional search in that Facebook, the holder of the data, can search an individual account for law enforcement and provide the precise data requested. *Burkhow*, 2020 U.S. Dist. LEXIS at 22 (citing *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) ("When it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data.") Given Facebook's ability to fulfill specific data requests and the vast trove of personal information in an individual's social media account, "search warrants for social media profiles 'can and should be targeted and particular.'" *Burkhow*, 2020 U.S. Dist. LEXIS at 22 (quoting *United States v. Hamilton*, 2019 U.S. Dist. LEXIS 159077\* (E.D. KY., Aug. 30, 2019).

Here the Facebook warrant affidavit essentially allows SA Angell of the Federal Bureau of Investigation (FBI) to obtain all data and information in Mr. Session's Facebook accounts, limiting the request by temporal purposes only. The search warrant contained virtually no limit on what SA Angell could search and seize. But the warrant should and could have been more limited in scope. The information Agent Angell requested from Mr. Session's accounts included eight categories of items to be seized: (1) basic user identity information; (2) IP address logs; (3) all private communications including in-box messages, sent messages, and messages in the trash folder; (4) stored user files including photographs, videos, blogs, and classifieds; (5) public wall messages and postings; (6) other general information, (7) phone numbers associated to the account; and (8) any and all Facebook Messenger application messages including private inbox messages, private sent messages, and

private messages in the trash folder.[1]  None of these categories were limited to seizing evidence of sex trafficking.  The Facebook warrant should have been limited by the crime. *United States v. Irving*, 347 F.Supp.3d 615, 623 (D. Kan. 2018) (holding that the Facebook search warrant should have been defined and limited by the only crime specified in the warrant).  One way this could have been accomplished is by using search terms to limit the information requested from Facebook, as has been done in other cases.  For example, in *Blake*, the defendant challenged the validity of a Facebook search warrant. 868 F.3d at 960.  The court found that "with respect to private instant messages…the warrants could have limited the request to messages sent to or from person suspected at that time of being prostitutes or customers." *Id*. at 974.  The Facebook search warrant here could have limited the seizure to private messages sent to and from persons believed to be a part of the sex trafficking scheme.

Further, the warrant could have specifically requested photos, videos, blogs, and classifieds that displayed or advertised sex trafficking, etc.  However, no limitations were placed on the requested information although the *Fourth Amendment* requires it, and Facebook's guidelines support it.  Facebook's guidelines on data retention state they "will search for and disclose data that is specified with particularity." Safety Center, Information for Law Enforcement Authorities, *Data Retention and Availability*, Facebook.com, https://www.facebool.com/safety/groups/law/guidelines/.  Besides the Facebook search warrant's failure to limit the seizure of evidence, it also was overbroad in

---

[1] Ex. A at Attachment B

seeking to search and seize evidence from Shannima Y. Session's Facebook pages, making it more of a general warrant that allowed unfettered rummaging through Mr. Session's personal data.

## CONCLUSION

As a result of the illegal search of Mr. Session's Facebook account(s), he respectfully requests that the Court suppress any and all physical evidence whether tangible or intangible; any and all observations of law enforcement officers and any other tangible or intangible evidence obtained during or as a direct or indirect result from the search of Mr. Session's Facebook account(s) as it was obtained as a direct violation of the Fourth Amendment.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By:   *s/Kafahni Nkrumah*
Kafahni Nkrumah
Assistant Federal Public Defender
Special Bar ID #A5502967
109 North Second Street
Fort Pierce, Florida 34950
Tel: 772-489-2123
E-Mail: Kafahni_Nkrumah@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on October 15, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _s/Kafahni Nkrumah_
Kafahni Nkrumah